**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**EDMUND J. RESTIVO, JR.**                                    **CIVIL ACTION**

**VERSUS**                                                              **NO: 06-32**

**HANGER PROSTHETICS & ORTHOTICS, INC.**          **SECTION: "K"(2)**

## ORDER AND REASONS

Before the Court is the First Motion for Summary Judgment (Rec.Doc.No. 18) of

Plaintiff Edmund J. Restivo, Jr. seeking judgment on his Declaratory Action (Rec.Doc.No. 1) as

well as dismissal of the claim alleging breach of a non-compete contract in the Counterclaim

(Rec.Doc.No. 12) of Defendant Hanger Prosthetics & Orthotics, Inc. ("Hanger"). After

reviewing the pleadings, memoranda, and relevant law, the Court hereby grants Plaintiff's

motion, in part, and denies it, in part, for the reasons assigned below.

Also before the Court is the Second Motion for Summary Judgment (Rec.Doc.No. 57) of

Plaintiff Edmond J. Restivo, Jr. ("Restivo"), wherein he seeks a judgment in his favor dismissing

the entire Counterclaim (Rec.Doc.No. 12) of Defendant Hanger Prosthetics & Orthotics, Inc.

1

("Hanger). After reviewing the pleadings, memoranda, and relevant law, the Court hereby grants

Plaintiff's motion, in part, and denies it, in part, for the reasons assigned below.

## I. BACKGROUND

***A.    Facts***

Plaintiff Restivo was employed with Hanger from July 1992 until his resignation in

August 2005, as office manager for Hanger's office on 3211 D'Hemecourt at Tulane Avenue,

New Orleans, Louisiana. The office is located in Orleans Parish. As a condition of employment,

Plaintiff signed an employment contract which contained non-compete, confidentiality, and non-

solicitation provisions. *See* Mot. Summ. J., Exhibit A "Employment Contract" (Rec.Doc.No. 18).

The relevant portions of the agreement read as follows:

    5.    <u>Non-Compete</u>

        (a)    In the event the Employment Period is terminated under paragraphs 4(b) or 4(c) above, then the non-compete provisions of this paragraph 5 will apply to the Employee. In the event the Employment Period is otherwise terminated, such as without Cause, then no part of this paragraph 5 will apply to Employee.

        (b)    Employee recognizes and acknowledges that by virtue of accepting employment hereunder, Employee will acquire valuable training and knowledge, enhance Employee's professional skills and experience, and learn proprietary trade

secrets and Confidential Information of the Company. In consideration of the foregoing and this employment contract, Employee agrees that during the Employment Period and for two (2) years thereafter (the "Non-Compete Period"), Employee shall refrain from directly or indirectly initiating, starting up, brokering, underwriting or commencing any business which is competitive with the Company's business of fabricating, distributing, wholesaling or retailing or orthotics or prosthetics, or the operation of clinics to fit patients for orthotics or prosthetics, or any other related non-manufacturing businesses which the Company is engaged in during and at the expiration of the Employment Period, at any location in the State of Louisiana within the parishes of Jefferson Parish, Orleans Parish, Plaquemines Parish, St. Bernard Parish, St. Charles Parish, St. James Parish, St. John the Baptist Parish (in which Employee acknowledges that the Company is currently carrying on its business), together with any other parishes or municipalities in which the Company is carrying on its business at the time of the termination of the Employment Period and where Employee has performed services on the Company's behalf (the "Non-Compete"). Nothing herein will prevent Employee from being a passive owner of non more than 1% of the outstanding stock of any class of a corporation which is engaged in a competitive business of the Company and which is publicly traded, so long as Employee has no participation in the business of such corporation. Employee agrees that the restraint imposed under this paragraph 5 is reasonable and not unduly harsh or oppressive.

(c)     If, at the time of enforcement of any provision of paragraph 5(b) above, a court or arbitrator holds that the restrictions stated therein are unreasonable or unenforceable under circumstances then existing, the Company and Employee agree that the maximum period, scope, or geographical area reasonable or permissible under such circumstances will be substituted for the stated period, scope or area.

(d)     Since a material purpose of this Agreement is to protect the Company's investment in the Employee and to secure the benefits of Employee's background and general experience in

3

the industry, the parties hereto agree and acknowledge that money damages may not be an adequate remedy for any breach of the provisions of this paragraph 5. Therefore, in the event of a breach by Employee of any of the provisions of this paragraph 5, the Company or its successors or assigns may, in addition to other rights and remedies existing in its favor, apply to any court of law or equity of competent jurisdiction for specific performance and/or injunctive or other relief in order to enforce or prevent any violations of the provisions of this Agreement.

6.    Confidential Information.

Employee acknowledges that the information, observations, data and trade secrets (collectively, "Confidential Information") obtained by Employee during the course of Employee's performance under this Agreement, and previously if Employee has already been an employee of the Company, concerning the business or affairs of the Company are the property of the Company. For purposes of this Agreement, "trade secret" means any method, program or compilation of information which is used in the Company's business, including but not limited to: (a) techniques, plans and materials used by the Company, (b) marketing methods and strategies employed by the Company, and (c) all lists of past, present or prospective patients, customers, referral sources and suppliers of the Company. Employee agrees that Employee will not disclose to any unauthorized Person or use for Employee's own account any of such Confidential Information without written consent of the Company, unless and to the extent that the aforementioned matters become generally known to and available for use by the public other than as a result of Employee's acts or omissions to act or become known to Employee lawfully outside the scope of Employee's employment under this Agreement. Employee agrees to deliver to the Company at the termination of Employee's employment, or at any other time the Company may request, all memoranda, notes, plans, records, reports and other documents (and copies thereof) relating to the business of the Company which Employee may then possess or have under Employee's control.

7.    Non-Solicitation.

4

Employee recognizes and acknowledges that by virtue of accepting employment hereunder, Employee will acquire valuable training and knowledge, enhance Employee's professional skills and experience, and learn proprietary trade secrets and Confidential Information of the Company. In consideration of the foregoing and this employment contract, Employee agrees that during the Employment Period and for two (2) years thereafter (the "Non-Solicitation Period"), Employee shall refrain from directly or indirectly soliciting any then existing patient, customer, referral source or supplier of the Company for the purpose of conducting business similar to that of the Company's business of fabricating, distributing, wholesaling or retailing or orthotics or prosthetics, or the operation of clinics to fit patients for orthotics or prosthetics, or any other related non-manufacturing businesses which the Company is engaged in during and at the expiration of the Employment Period, with such patient, customer, referral source or supplier, at any location in the State of Louisiana within the parishes of Jefferson Parish, Orleans Parish, Plaquemines Parish, St. Bernard Parish, St. Charles Parish, St. James Parish, St. John the Baptist Parish (in which Employee acknowledges that the Company is currently carrying on its business), together with any other parishes or municipalities in which the Company is carrying on its business at the time of the termination of the Employment Period and where Employee has performed services on the Company's behalf (the "Non-Solicitation"). Furthermore, during the Non-Solicitation Period, Employee shall not, without the Company's prior written consent, directly or indirectly, knowingly solicit or encourage or attempt to influence any employee to leave the employment of the Company or to participate or assist with the formation or operations of any business that competes, or is intended to compete, with the Company.

Mot. Summ. J., Exhibit A "Employment Contract" (Rec.Doc.No. 18).

***B.***     ***Procedural History***

Seeking declaration that he was not in violation of the terms of the non-compete covenant, Mr. Restivo filed a declaratory action in Civil District Court for the Parish of Orleans, State of Louisiana. Specifically, he sought a ruling that his opening of Limbcare Prosthetics & Orthotics, Inc. ("Limbcare") in St. Tammany Parish was not a violation of the terms of his Employment Contract. Defendant Hanger removed the action and filed its Counterclaim (Rec.Doc.No. 12) requesting that the Court award monetary damages and injunctive relief related to losses arising out of Mr. Restivo's breach of his Employment Contract.

***C.***     ***Parties' Contentions***

      ***i.***     ***First Motion for Summary Judgment***

The central question with respect to the First Motion for Summary Judgment is whether the provision in the contract expanding the geographical limitation of the non-compete agreement extends to St. Tammany Parish by virtue of the language prohibiting Plaintiff from competing with Hanger in parishes "where Employee has performed services on the Company's behalf." Plaintiff filed his First Motion for Summary Judgment seeking a judgment on his declaratory action and dismissal of Defendant's Counterclaim with respect to the contention that Mr. Restivo violated the non-compete provision of his Employment Contract. Specifically,

Plaintiff argues that he did not conduct business on behalf of Hanger in St. Tammany Parish, or alternatively, that the provision does not apply to St. Tammany Parish because it is in violation of Louisiana statutory law, which requires the parishes within the geographical restriction in the non-compete agreement to be explicitly identified. Defendant Hanger argues that the non-compete contract extends to St. Tammany Parish because Mr. Restivo conducted business on behalf of Hanger in that parish, and because such a geographical restriction in the contract reasonably identifies St. Tammany Parish, the agreement is in accordance with La. R.S. § 23:921.

### ii.     *Second Motion for Summary Judgment*

Plaintiff's Second Motion for Summary Judgment seeks dismissal of the remainder of the causes of action brought in the Counterclaim. Specifically, Plaintiff Restivo contends the following:

1.     Mr. Restivo is not in breach of the non-solicitation provision of his employment agreement with Hanger because he never worked in St. Tammany Parish for Hanger and/or the provision is in violation of La. R.S. 23:921(C) for not specifically identifying St. Tammany Parish in its geographic limitations;

2.     Mr. Restivo is not in breach of the confidential information provision of his employment agreement with Hanger because he contacted local physicians from memory and through the telephone directory.

3.     Mr. Restivo did not breach any fiduciary duty or loyalty to

7

Hanger during his employment with Hanger because all work for his company Limbcare was done during his own time and with his own equipment.

4.      Mr. Restivo does not owe damages for tortious interference with contract because he did not breach his employment contract with Hanger.

5.      Mr. Restivo is not in violation of Louisiana Unfair Trade Secrets Act because he relied on his memory and the telephone directory of his clients.

6.      Mr. Restivo did not engage in Unfair Trade Competition because he relied on his memory and the telephone directory for his clients, and Defendant cannot show that his actions violated public policy in some way as to warrant recovery under the Louisiana Unfair Trade Practices Act.

7.      Injunctive Relief is not warranted because Mr. Restivo did not breach his employment contract.

*See* Second Mot. Summ. J. (Rec.Doc.No. 57).

Defendant Hanger argues that the instant motion for summary judgment be denied because Mr. Restivo violated the Unfair Trade Practices Act by seeing former Hanger patients beginning on August 15, 2005, in Georgia (Restivo resigned from Hanger on August 7, 2005). Defendant introduces medical records of three former Georgia Hanger patients who received care at Georgia's Limbcare office. Defendant argues that these records are proof that Restivo conspired with Mr. John Rodman to commit unfair trade practices against Hanger.

Moreover, Hanger argues that the non-solicitation provision of the Employment Contract extends to St. Tammany Parish because Mr. Restivo treated Slidell and other St. Tammany parish patients at Hanger's Tulane office as well as relied upon St. Tammany Parish physicians

8

for referrals during the time of his employment with Hanger. Hanger submits that Mr. Restivo breached this portion of the contract by soliciting former Hanger patients and using referral sources that existed in St. Tammany and elsewhere. Additionally, Hanger contends that this provision was breached when Mr. Restivo solicited Mr. Rodman, also a former employee of Hanger, to start a competing prosthetics clinic.

Hanger further argues that Restivo violated the confidential information provision of Employment Contract when he used Hanger's Slidell patient lists, referral lists, and marketing strategies he obtained while working at Hanger's Tulane office. Specifically, Hanger accuses Limbcare of "stealing and converting Hanger' componentry (sic) for Limbcare's own use"[1] as well as "copying forms that Hanger uses" for its patients. *See* Second Mot. Summ. J., at p. 15-16 (Rec.Doc.No. 22).

Hanger also brings a claim for tortious interference with contract/business relations. Hanger supports this claim by arguing that Mr. Restivo conspired with Mr. Rodman to "have Hanger patients...take delivery of their prosthetic devices at Limbcare's offices in Albany Georgia."

Finally, Hanger supports its Unfair Trade Practices claim by arguing that when Mr. Restivo saw former Hanger patients in Georgia's Limbcare office starting as early as August 2005, this constituted fraud, misrepresentation, deceit, and/or unethical conduct in violation of

---

[1] Hanger contends that Restivo conspired to commit theft and criminal conversion in violation of Louisiana Civil Code article 2324; however, this contention is not plead in the Counterclaim. The Counterclaim has five causes of action, those being, claims arising out of the breach of the employment contract, tortious interference with contract, violation of the Trade Secrets Act, unfair trade competition, and a request for injunctive relief.

Louisiana's Unfair Trade Practices and Consumer Protection Law.

## II. LEGAL STANDARD

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the burden shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. "[M]ere allegations or denials" will not defeat a well-supported motion for summary judgment. Fed. R. Civ. P. 56(e). Rather, the non-movant must come forward with "specific facts" that establish an issue for trial.

*Id*.

When deciding a motion for summary judgment, the Court must avoid a "trial on the affidavits." *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are tasks for the trier-of-fact. *Id*. To that end, the Court must resolve disputes over material facts in the non-movant's favor. "The party opposing a motion for summary judgment, with evidence competent under Rule 56, is to be believed." *Leonard v. Dixie Well Service & Supply, Inc*., 828 F.2d 291, 294 (5th Cir. 1987).

## III. ANALYSIS

### A.      *Choice of Law*

The parties submit that Louisiana law governs the dispute, despite the Employment Contract's provision stating Maryland law applies.[2] Because this Court is exercising diversity jurisdiction over this dispute, the conflicts doctrine of the forum state, i.e. Louisiana, applies to determine whether the contractual choice of law provisions are enforceable. *Curtis Callais Welding, Inc. v. Stolt Comex Seaway Holdings, Inc.*, 129 Fed. Appx. 45, 51 (5th Cir. 2005). The Louisiana Civil Code article 3540 states as follows:

---

[2] The Employment Contract states, "All questions concerning the construction, validity and interpretation of the Agreement will be governed by the internal law, and not the law of conflicts, of the State of Maryland." *See* Employment Contract, at p. 4 (Rec.Doc.No. 18).

11

> All other issues of conventional obligations [, i.e., contracts] are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable Article 3537.

LA. CIV. CODE ART. 3540.

"Louisiana courts typically will not invalidate a choice-of-law provision agreed upon between parties, unless the chosen law violates a strong public policy of the state." *Curtis Callais Welding*, 129 Fed. Appx. at 52 (*citing Delhomme Industries, Inc. v. Houston Beechcraft, Inc.*, 669 F.2d 1049 (5th Cir. 1982).

Louisiana has a strong public policy disfavoring non-compete covenants, as expressed in Louisiana Revised Statutes § 22:921,[3] which reads as follows:

> A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.
>
> ....
>
> C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.

LA. REV. STAT. ANN § 22:921.

---

[3] The statute also renders null and void choice of law provisions which are not "expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action." LA. REV. STAT. ANN. § 23:921(B).

The Court finds that Louisiana law governs the interpretation of the Employment Contract given Louisiana's strong public policy disfavoring non-compete contracts, and because the contract was executed in Louisiana by a Louisiana domiciliary working under the contract in this state.

**B.      First Motion for Summary Judgment  –  Non-Compete Covenants**

With respect to the claim asserting breach of the Employment Contract's non-compete provision, the issues presented are 1) whether the geographical restriction contained in the Employment Contract is enforceable under Louisiana law; 2) whether there exists a genuine dispute as to whether Mr. Restivo conducted business on behalf of Hanger in St. Tammany Parish; and 3) whether Mr. Restivo competed with Hanger in the specified parishes in the non-compete provision in the Employment Contract. For the reasons assigned below, the Court finds that Mr. Restivo did not conduct business on behalf of Hanger in St. Tammany Parish, and therefore, the Court does not address whether the geographical restriction is valid under Louisiana law as to St. Tammany Parish. Moreover, the Court finds that there exists a genuine issue of material fact as to whether Mr. Restivo violated the non-compete agreement by competing with Hanger in those parishes listed in the non-compete provision.

"Non-compete agreements are not favored in Louisiana." *Lafourche Speech & Language Servs., Inc. v. Juckett*, No. 94-1809 (La. App. 1 Cir. 3/3/9); 652 So.2d 679; *see also Dixie Parking Serv., Inc. v. Hargrove*, No. 96-1929 (La. App. 4 Cir. 3/26/97); 691 So.2d 1316. As noted above, Louisiana statutory law generally holds non-compete provisions, excepting certain

13

employer-employee agreements that are limited in time and geographical scope. LA. REV. STAT.
ANN. § 23:921. The Louisiana Supreme Court has articulated the standard for interpreting non-
compete agreements as follows:

> Louisiana's strong public policy restricting these types of agreements
> is based upon an underlying state desire to prevent an individual from
> contractually depriving himself of the ability to support himself and
> consequently becoming a public burden. *See McAlpine v. McAlpine,*
> 94-1595, p. 11 (La.9/5/96), 679 So.2d 85, 91. Because such
> covenants are in derogation of the common right, they must be
> strictly construed against the party seeking their enforcement. *Hirsh
> v. Miller,* 249 La. 489, 187 So.2d 709, 714 (1966); *Turner
> Professional Services, Ltd. v. Broussard,* 99-2838, p. 3 (La.App. 1
> Cir. 5/12/00), 762 So.2d 184, 185. The exceptions to this provision
> are specifically enumerated by the statute and provide for
> employer/employee relationships, corporation/shareholder
> relationships, partnership/partner relationships and
> franchise/franchisee relationships. The statute defines the limited
> circumstances under which a noncompetition clause may be valid in
> the context of each of these relationships.

*SWAT 24 Shreveport Bossier, Inc. v. Bond*, No. 00-1695, at p. 5 (La. Jun. 29, 2001); 808 So.2d
294, 298.

The limitation forbids Mr. Restivo from competing with Hanger at:

> any location in the State of Louisiana within the parishes of Jefferson
> Parish, Orleans Parish, Plaquemines Parish, St. Bernard Parish, St.
> Charles Parish, St. James Parish, St. John the Baptist Parish (in which
> Employee acknowledges that the Company is currently carrying on
> its business), together with any other parishes or municipalities in
> which the Company is carrying on its business at the time of the
> termination of the Employment Period and where Employee has
> performed services on the Company's behalf (the "Non-Compete").

Mot. Summ. J., Exhibit A (Rec.Doc.No. 18).

14

Mr. Restivo's business Limbcare is located in St. Tammany Parish, which is not specifically listed in the geographical restriction of the non-compete covenant. Defendant Hanger contends that Mr. Restivo had performed services for Hanger in St. Tammany, and therefore, the language "where Employee has performed services on the Company's behalf" operates to enjoin Mr. Restivo from operating Limbcare in St. Tammany Parish. The most recent Louisiana jurisprudence interpret La. R.S. § 23:921 as requiring parishes to be specifically listed in a non-compete covenant's geographical restriction. *Vartech Systems, Inc. v. Hayden*, 2006 WL 3734369 (La. App. 1 Cir. 12/20/06); *Turner Professional Servs., Ltd. v. Broussard*, No. 99-2838 (La. App. 1 Cir. 5/12/00); 762 So.2d 184; *Kimball v. Anesthesia Specialists of Baton Rouge*, No. 00-1954 (La. App. 1 Cir. 9/28/01); 809 So.2d 405;  There is also conflicting jurisprudence holding that the geographical restriction need only be reasonably identifiable from the provisions of the contract. *Portor v. Milliken & Michaels, Inc.*, 2001 WL 617184, at *3 (E.D. La. Jun. 5, 2001); *Petroleum Helicopters, Inc. v. Untereker,* 731 So.2d 965, 967 (La.App. 3d Cir.1999). The Louisiana Supreme Court has not addressed this issue, and thus, this Court would have to make an "*Erie* guess" as to whether the statute requires a non-compete covenant to specifically list the parishes intended to fall within the geographical restriction. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78 (1938); *Musser Davis Land Co. v. Union Pacific Resources,* 201 F.3d 561, 565 (5th Cir. 2000).

However, the Court need not make an "*Erie* guess" interpreting La. R.S. § 23:921 in this case because Defendant Hanger has not submitted evidence that creates a genuine issue of material fact as to whether Mr. Restivo conducted business on behalf of Hanger in St. Tammany

Parish. Hanger only alleges, through the affidavit of Jeffrey Lutz, that Mr. Restivo was the Area

Practice Manager of Hanger's Tulane office (located in Orleans Parish) for a period of two or

three months, which made him responsible for managing Hanger's operations in St. Tammany

Parish. There is no evidence that Mr. Restivo entered St. Tammany Parish for Hanger, made

phone calls on behalf of Hanger to patients or referral sources located St. Tammany Parish, or

otherwise conducted any business there. Mr. Lutz's speculations that the Area Practice Manager

would have had to manage Hanger's operations in St. Tammany Parish is not sufficient given

that there is no corroborating evidence and the short period of time at which Mr. Restivo was

employed as Area Practice Manager. Moreover, the phrase "performed services" is not defined

in the contract and is vague. It is certainly arguable that considering Mr. Restivo's principal

function was fitting orthotics and prosthetics that "performing services" requires he actually do

this while physically in St. Tammany Parish.

 With respect to whether Mr. Restivo competed with Hanger in the listed parishes, Hanger

submitted eleven charts of former Hanger patients who resided in some of the parishes listed in

the non-compete provision. *See* Supp. Opp. Mot. Summ. J., Exhibit 7 (Rec.Doc.No. 80). These

charts create a genuine issue of material fact as to whether Mr. Restivo competed with Hanger in

the non-compete agreement's listed parishes. The charts indicated that Mr. Restivo treated

former Hanger patients who resided in Orleans Parish, Jefferson Parish, and St. John the Baptist

Parish at the Slidell Limbcare office. While this fact alone does not show Mr. Restivo violated

the non-compete provision, an inference can be made that he improperly induced these patients

to be treated at his office in St. Tammany Parish. This would constitute competing in listed

parishes which is prohibited by his Employment Contract.[4]

However, the Court notes that by seeing former Hanger patients at his St. Tammany Parish office, Mr. Restivo is not *per se* in violation of the non-compete provisions. Indeed, given that there is not a relatively great number of people requiring the types of services offered by Mr. Restivo and Hanger, the distinction between the market for prosthetic and orthotic patients in the listed parishes and St. Tammany Parish market may very well be academic; however, in order for § 23:921 to have content, Mr. Restivo must be allowed to conduct his business in St. Tammany Parish. If patients came to see him voluntarily, and without his solicitation, Mr. Restivo cannot be said to have violated his non-compete agreement.

## C.    *Second Motion for Summary Judgment*

### i.    *Non-Solicitation*

A non-solicitation provision is subject the geographical limitation requirement as a non-compete provision. La. Rev. Stat. Ann. § 23:921(C). Plaintiff Restivo claims that the non-solicitation provision in his employment contract with Hanger is invalid because the geographical restriction does not specifically list St. Tammany Parish as is required by La. R.S. §

---

[4] Indeed, the questions of whether Mr. Restivo violated the non-solicitation provision of the Employment Contract by improperly soliciting Hanger patients residing in the listed parishes and whether he violated the non-compete provision become coextensive under the factual circumstances of this case.

23:921(C) and/or he is not in breach of the provision because he never engaged in business in St. Tammany Parish on behalf of Hanger.

In determining the statute's application in the context of reviewing a non-solicitation provision, the Louisiana First Circuit Court of Appeals held the following:

> Section 921(C) requires that the restricted parish or parishes, municipality or municipalities, or parts thereof be "specified." When this requirement is combined with the principle of strictly construing exceptions to the longstanding public policy of this state disfavoring agreements not to compete, we are obligated to find that the non-solicitation clauses at issue in this case are unenforceable, because they failed to conform to LSA-R.S. 23:921(C). While geographic limits may be inferred from the limits of the non-compete clauses in the non-competition agreements, we decline to reform the non-solicitation clauses pursuant to the savings clauses in favor of the [employer]. (citations omitted).

*Vartech Systems, Inc. v. Hayden*, 2006 WL 3734368, at *8 (La. App. 1 Cir., 12/20/06).

Here, it is undisputed that Hanger did not list St. Tammany Parish in the non-solicitation provision. However, Defendant submits that the provision applies to anywhere Hanger is "carrying on its business at the time of the termination of the Employment Period and where Employee has performed services on the Company's behalf." *See* Employment Agreement. Hanger argues that Restivo saw St. Tammany Parish patients and used St. Tammany Parish physicians as referral sources while he worked at Hanger's Tulane office. This, according to Hanger, constitutes engaging in business on behalf of Hanger in St. Tammany Parish.

The Court finds that Mr. Restivo did not engage in business on behalf of Hanger by seeing patients in Hanger's Orleans Parish office that happened to reside in St. Tammany Parish. Moreover, there is no competent evidence beyond the speculations of Mr. Lutz that Mr. Restivo

physically went into St. Tammany Parish on behalf of Hanger. Thus, the Court finds that these allegations do not create a genuine issue of material fact as to whether Mr. Restivo engaged in business on behalf of Hanger in St. Tammany Parish, and therefore, the Court also finds that the non-solicitation agreement does not extend to St. Tammany Parish.

However, Hanger submits the eleven patient charts mentioned above which create a genuine issue of material fact as to whether Mr. Restivo solicited patients from the listed parishes. These charts show that Mr. Restivo saw former Hanger patients who lived in Orleans Parish, Jefferson Parish, and St. John the Baptist Parish. For the reasons stated above in the context of the breach of the non-compete provision, the Court finds the existence of a genuine issue of fact and denies Plaintiff's motion with respect to this issue.

### ii.    *Trade Secrets and Confidential Information*

The Louisiana Uniform Trade Secrets Act governs the dispute over the alleged breach of the confidential information provision of Restivo's employment contract with Hanger. *See* LA. REV. STAT. ANN. § 51:1431-39. The burden is on the obligee to establish "both the existence of a legally protectable secret and a legal basis upon which to predicate relief." *Ponchartrain Medical Labs, Inc. v. Roche Boimedical*, No. 95-2260 (La. App. 1 Cir. 6/29/96); 677 So.2d 1086, 1090 (*citing Engineered Mechanical Servs. v. Langlois*, No 83-1384 (La. App. 1 Cir. 12/28/84); 464 So.2d 329. The court describes the legal test for determining whether there has been a violation of the Louisiana Uniform Trade Secrets Act as follows:

19

> The threshold inquiry in every trade secrets case is whether a legally protectable trade secret actually existed. *Engineered Mechanical*, 464 So.2d at 333. The second element is whether an express or implied contractual or confidential relationship existed between the parties which obligated the party receiving the secret information not to use or disclose it. *Id.* Finally, the [obligee] must prove the party receiving the secret information wrongfully breached its duty of trust or confidence by disclosing or using the information to the injury of the [obligee]. *Id.* at 334; La. R.S. 51:1431(2)(b)(ii)(bb).

*Ponchartrain Medical Labs*, 677 So.2d at 1090.

Louisiana law defines a "trade secret" as

> "information, including a formula, patter, compilation, program, device, method, technique, or process, that:
>
> (a)    derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and
>
> (b)    is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

La. Rev. Stat. Ann. § 51:4331.  For example, "[a] customer list or special pricing list may be a trade secret if efforts are made to maintain its secrecy." *Ponchartrain Medical Labs*, 677 So.2d at 1090.

Here, Hanger contends that Mr. Restivo used "Hanger's Slidell patient lists, referral lists, and marketing strategies,[5] all of which is Confidential Information obtained while he was employed at the Tulane office." *See* Opp. Mot. Summ. J., at p. 17 (Rec.Doc.No. 22). The contractual provision indeed provides that confidential information includes: (a) techniques, plans and material used by the Company, (b) marketing methods and strategies employed by the

---

[5] Hanger offers no showing whatsoever as to what marketing strategies were employed by Mr. Restivo that are trade secrets.

Company, and (c) all lists of past, present or prospective patients, customers, referral sources and suppliers of Company." *Id.*, at 16. However, the enforceability of this contractual provision depends on whether it reaches beyond the Louisiana Uniform Trade Secrets Act.

Plaintiff Restivo argues that he obtained any putative confidential information through memory and/or the telephone directory. With regard to alleged confidential referral sources, clearly, it would seem that there are a finite number of referral sources doing business related to prosthetic devices in St. Tammany Parish. Moreover, it would be logical to assume that the contact information of these referral sources would be readily available in the telephone directory. This fact alone would exclude the information from the protections of the Trade Secrets Act. Notwithstanding such an assumption, the Court has no proof from Plaintiff, in any case, demonstrating that Hanger's list of St. Tammany Parish referral sources is a trade secret under Louisiana law. Thus, the Court finds that Mr. Restivo did not violate the confidentiality provision or the Louisiana Trade Secrets Act by using Hanger's referral sources.

The question is much closer with respect to the allegations regarding Hanger's St. Tammany Parish patient lists. Indeed, a compilation of those St. Tammany Parish patients with prosthetic devices would be valuable to a competing business. Hanger, however, offers only the blanket allegation that a Hanger patient list was used by Restivo without any specific evidence that he obtained and used a Hanger patient list.

On the other hand, Restivo's argument that he remembered patients names without obtaining a Hanger patient list may not absolve him from liability under the Louisiana Uniform Trade Secrets Act. That is, if the information is the kind protected by the Act, and there is an

agreement prohibiting disclosure or unauthorized use[6] of that information, then Mr. Restivo

would have been in violation of the Act by using the protected information regardless of how he

obtained it from Hanger. Thus, the Court finds that there exists a genuine dispute as to material

fact whether Mr. Restivo breached his employment contract with Hanger and the Louisiana

Uniform Trade Secrets Act by improperly using Hanger's patient list.

---

[6] The Uniform Trade Secrets Act provides:

> (b)     disclosure or use of a trade secret of another without express
> or implied consent by a person who:
>
> (i)     used improper means to acquire knowledge of the
> trade secret; or
>
> (ii)    at the time of disclosure or use, knew or had reason to
> know that his knowledge of the trade secret was:
>
>> (aa)    derived from or through a person who had
>> utilized improper means to acquire it;
>>
>> (bb)    acquired under circumstances giving rise to a
>> duty to maintain its secrecy or limit its use; or
>>
>> (cc)    derived from or through a person who owed a
>> duty to the person seeking relief to maintain
>> its secrecy or limit its use; or
>
> (iii)   before a material change of his position, knew or had
> reason to know that it was a trade secret and that
> knowledge of it had been acquired by accident or
> mistake.

LA. REV. STAT. ANN. § 51:1431(2)(b).

***iii.*       *Breach of Fiduciary Duty or Loyalty and Unfair Trade Practices***

With respect the fiduciary duty and/or duty of loyalty of employees to their employers, the

Louisiana First Circuit Court of Appeals has recently written as follows:

> Employees and/or mandataries owe a duty of fidelity to their employers and/or principals. *ODECO Oil & Gas Co. v. Nunez,* 532 So.2d 453, 462 (La.App. 1 Cir.1988), *writ denied,* 535 So.2d 745 (La.1989). An employee is duty bound not to act in antagonism or opposition to the interest of the employer. Every one, whether designated agent, trustee, or servant, who is under contract or other legal obligation to represent or act for another in any particular business or line of business must be loyal and faithful to the interest of such other in respect to such business or purpose. *Boncosky Services, Inc. v. Lampo,* 98-2239 (La.App. 1 Cir. 11/5/99), 751 So.2d 278, 287, *writ denied,* 00-0322 (La.3/24/00), 758 So.2d 798.
>
> However, historically, an employee's breach of his fiduciary duty to his employer has been contemplated in instances when an employee has engaged in dishonest behavior or unfair trade practices for the purpose of his own financial or commercial benefit. *See ODECO Oil & Gas,* 532 So.2d at 459- 64; *Realty Mart, Inc. v. Greenwell Commercial Properties, Inc.,* 343 So.2d 459, 461-462 (La.App. 1 Cir.), *writ refused,* 345 So.2d 902 (La.1977); *Martinez Management, Inc. v. Caston,* 39,500 (La.App. 2 Cir. 4/13/05), 900 So.2d 301, 304-05; *171 *Cenla Physical Therapy & Rehabilitation Agency, Inc. v. Lavergne,* 94-1538 (La.App. 3 Cir. 5/3/95), 657 So.2d 175, 177-78.

*Harrison v. CD Consulting, Inc.*, No. 05-1087 (La. App. 1 Cir. 5/5/06); 934 So.2d 166, 170-71.

Thus, the question of breach of fiduciary duty or loyalty as an employee collapses into

the question of whether the employee's actions constitute unfair trade practices, which is defined

in the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"). *See* LA.

REV. STAT. ANN. § 51:1401, *et seq.* The statute applies to all contracts and broadly prohibits

"[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any

trade or commerce." LA. REV. STAT. ANN. §§ 51:1403 & 1405.

A "practice is unfair when it offends established public policy and when the practice is

immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Coffey v.*

*Peoples Mortgage & Loan of Shreveport, Inc.*, No. 14718 (La. App. 2 Cir. 12/7/81); 408 So.2d

1153. An example of such dishonest behavior or unfair trade practices would be the "solicitation

and diversion of an employer's customers prior to termination." *ODECO*, 532 So.2d at 463.

However, for example, "[s]olicitation of customers after the end of the employment relationship

likewise does not form the basis for a cause of action for unfair competition." *First Page*

*Operating Under the Name and Corporate Entity, Groome Enterprises, Inc. v. Network Paging*

*Corporation*, No. 93-0030 (La. App. 4 Cir. 11/30/93); 638 So.2d 130 (*citing Ahmed v. Bogalusa*

*Kidney Care Center,* 560 So.2d 485 (La.App. 1st Cir., *writ den.* 564 So.2d 324 (La.1990)).[7]

Restivo argues that all steps towards establishing his own prosthetics business while he

---

[7] "Previous [court] decisions have allowed former employees in soliciting customers to rely on their memory and on the general information they acquired while they were employed by the plaintiff." *National Oil Service of Louisiana, Inc. v. Brown*, No. 9740 (La. App. 4 Cir. 2/7/80); 381 So.2d 1269. However, other factors that are relevant include the following:

> the manner in which and the purpose for which the customer lists are compiled; the conduct and motivation of the employee before and after the employment relationship ends; the manner in which the customers are contacted after the termination; the nature of the representations made to the customers by the former employee; and the existence of a scheme or an intent to injure or to take over all or a substantial part of the former employer's business.

*SDT Industries, Inc. v. Leeper*, No. 34,655 (La. App. 2 Cir. 5/22/01); 793 So.2d 327 (*quoting Core v. Martin*, No. 20528 (La. App. 2 Cir. 5/10/89); 543 So.2d 619.

was employed at Hanger was done on his own time. The Louisiana Second Circuit Court of

Appeals wrote:

> Competition and free enterprise are favored. As long as conduct is
> neither unlawful nor offensive to public policy, persons are able to
> discuss changes of employment, effectuate a change in employment,
> plan to compete and take preliminary steps in furtherance of that
> plan.

*Nursing Enterprises, Inc. v. Marr*, No. 30776 (La. App. 2 Cir. 8/19/98); 719 So.2d 524 (*citing*

*Orkin Exterminating Company v. Foti*, 302 So.2d 593 (La.1974). Indeed, "[i]n determining what

constitutes an unfair trade practice, the courts have focused on the actions taken by employees

before they leave their employers." *Monroe Medical Clinic, Inc. v. Hospital Corp. of America*,

No. 24426 (La. App. 2 Cir. 7/21/93); 622 So.2d 760, 785.

The Court determined during Oral Argument that Plaintiff's Employment terminated on

August 7, 2005, when he tendered his resignation.[8] Hanger offered evidence that Mr. Restivo

saw former Hanger patients in Georgia's Limbcare office only a few weeks after he had tendered

his resignation with Hanger. Defendant argues that this fact raises an inference that Mr. Restivo

breached his duty of loyalty or fiduciary duty to his employer while he was employed with

Hanger. The Court agrees with Hanger in that Mr. Restivo essentially began working at the

Georgia Limbare office almost immediately after his resignation. This raises the inference that

he may very well have breached his duties to Hanger while employed there by, for example,

inducing, or causing another to induce, Hanger patients to be treated at the Georgia Limbcare

---

[8] Although Mr. Restivo indicated that he would work until October 2005, Hanger
instructed him not to come to work for security reasons, though they agreed to pay him until
October 2005.

office prior to his resignation.  The Court finds that this evidence is sufficient to create a genuine issue of material fact as to whether Mr. Restivo breached his duty of loyalty and/or fiduciary duty to his employer.

Moreover, insofar as there is a genuine issue of material fact as to Hanger's other causes of action, the Court finds that there exists a genuine dispute as to material fact as to whether Mr. Restivo would be liable for such violations under the LUPTA.

### iv.  *Tortious Interference with Contract/Business Relations*

#### a.  *Contract*

Tortious interference with contract was recognized in a limited fashion by the Supreme Court of Louisiana in *9 to 5 Fashions, Inc. v. Spurney,* 538 So.2d 228 (La.1989) and to date the holding has been "restricted to the precise cause of action it explicates: that is a situation involving a corporation, an officer of the corporation, and a contract between the corporation and a third party." *Egorov, Pughinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey,* 1998 WL 483483, *3 (E.D.La. Aug.14, 1998), *citing Great Southwest Fire Ins. Co. v. CNA Ins. Cos.,* 557 So.2d 966 (La.1990); *Kite v. Gus Kaplan, Inc.,* 708 So.2d 473 (La.App. 3d Cir.1998); *Colbert v. B.F.Carvin Const. Co.,* 600 So.2d 719 (La.App. 5th Cir.1992); *Durand v. McGaw,* 635 So.2d 409 (La.App. 4th Cir.1994).

Mr. Restivo is not alleged to be a corporate officer so this cause of action does not apply

26

to him. *White v. White*, No. 93-1389 (La. App. 3 Cir. 6/15/94); 641 So.2d 538 (no cause of action

for tortious interference with contract where the defendant was not a corporate officer).

Moreover, this cause of action cannot be maintained against a corporate entity defendant, thus, it

cannot be maintained against Limbcare. *Technical Contrl Systems, Inc. v. Green*, No. 01-0955

(La. App. 3 Cir. 2/27/02); 809 So.2d 1204. Therefore, the Court grants summary judgment in

favor of Plaintiff Restivo with respect to this claim.


### b.    Business Relations


Louisiana courts have long recognized a cause of action for tortious interference with

business. *Junior Money Bags, Ltd. v. Segal,* 970 F.2d 1 (5th Cir.1992), citing *Dussouy v. Gulf

Coast Inv. Corp.,* 660 F.2d 594 (5th Cir.1981), citing *Graham v. St. Charles St. Railroad Co.,* 47

La. Ann. 1656, 18 So. 707 (1895). This claim is distinct from that of tortious interference with a

contract. Louisiana law protects the business man from 'malicious and wanton interference,

"permitting only interferences designed to protect a legitimate interest of the actor." *Dussouy,*

660 F.2d at 601. "Thus, the plaintiff in a tortious interference with business suit must show by a

preponderance of the evidence that the defendant improperly influenced others not to deal with

the plaintiff." [citations omitted]. *Junior Money Bags,* 970 F.2d at 10. Furthermore, this cause of

action unlike the contractual interference cause of action, is not restricted to officers of

corporations. *Medx, Inc. of Florida v. Ranger,* 1993 WL 21250 (E.D.La. Jan. 25, 1993).

Hanger must show that Restivo possessed some sort of malice in order to recover for

27

tortious interference with business relations. *Endotech USA v. Biocompatibles Intern, PLC*, 2000 WL 1594086 (E.D. La. Oct. 24, 2000). Hanger has not submitted any evidence of malice, and thus, the Court grants summary judgment in favor of Plaintiff Restivo with respect to this claim. Accordingly,

**IT IS ORDERED** that Plaintiff's First Motion for Summary Judgment (Rec.Doc.No. 18) is **DENIED**, in part, and **GRANTED**, in part. As to the cause of action seeking a declaration that the non-compete provision is unenforceable, the Court finds that enforceability of the non-compete provision does not extend to St. Tammany Parish, but extends to all the listed parishes in the agreement so long as evidence is introduced showing that Hanger conducted business therein.

**IT IS FURTHER ORDERED** that Plaintiff's Second Motion for Summary Judgment (Rec.Doc.No. 57) is **DENIED** in part and **GRANTED** in part.

As to the cause of action seeking declaration that the non-solicitation provision is unenforceable, the Court hereby grants the motion and finds that the non-solicitation provision is unenforceable with regard to St. Tammany Parish, but denies the motion finding that the agreement is enforceable in the parishes listed in the Employment Contract, so long as evidence is introduced showing that Hanger conducted business therein.

As to the dismissal of the causes of action asserting breach of confidentiality agreement and a violation of the Louisiana Unfair Trade Secrets Act, the Court hereby denies the motion finding that there exists a genuine issue of material fact as to whether Mr. Restivo improperly used Hanger

patient lists or the information contained therein to start his competing business.

As to the causes of action alleging a breach of fiduciary duty or loyalty and a violation of the Louisiana Unfair Trade Practices Act, the Court hereby denies the motion finding that there exists a genuine issue of material fact as to whether Mr. Restivo breached his duty of loyalty and/or fiduciary duty to Hanger during his employment with Hanger, and a genuine issue exists as to whether Mr. Restivo's conduct constitutes an unfair trade practice.

New Orleans, Louisiana, on this 11th day of April, 2007.


_____
**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**

29