UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EDMUND J. RESTIVO, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 06-32** |
| **HANGER PROSTHETICS & ORTHOTICS, INC.** | **SECTION: "K"(2)** |

## ORDER AND REASONS

Before the Court is the Motion for Reconsideration (Rec.Doc.No. 104) of Defendant Hanger Prosthetics & Orthotics, Inc. ("Hanger"), wherein it is alleged that the Court reconsider issues disposed of in its Order and Reasons (Rec.Doc.No. 85) of April 11, 2007. After reviewing the pleadings, memoranda, and relevant law, the Court hereby denies Hanger's motion for the reasons assigned below.

## I. LEGAL STANDARD

Defendant's "Motion for Reconsideration" should more properly be designated as a motion to alter or amend a judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. *Ferguson v. Barnhart*, 2003 WL 21714987, at *1 (E.D. La. Jul. 21, 2003), (*quoting Peterson v. CIGNA Group Ins.*, 2002 WL 1268404 (E.D. La. Jun. 5, 2002)). *See St. Paul Mercury Insurance Company v. Fair Grounds Corp., et al.*, 123 F.3d 336, 339 (5th Cir. 1997) (motion to alter or amend under Rule 59(e) is proper motion to contest summary judgment);

1

*Patin v. Allied Signal Inc.*, 77 F.3d 782, 785 n.1 (5th Cir. 1990) (motion to reconsider entry of summary judgment properly styled a Rule 59(e) motion); *Laverspere v. Niagra Mach. & Tool Works, Inc*., 910 F.2d 167, 175 (5th Cir. 1990) (motion that challenges prior summary judgment filed within 10 days of judgment is brought under Rule 59(e)).

      This Court has recognized four grounds upon which a Rule 59(e) motion may be granted: (1) to correct manifest errors of law or fact upon which judgment is based, (2) the availability of new evidence, (3) the need to prevent manifest injustice, or (4) an intervening change in controlling law. *Peterson v. CIGNA Group Ins*., 2002 WL 1268404, at *2. The Court has further recognized that "[r]econsideration of a judgment is an extraordinary remedy which courts should use sparingly," *id*., (*see* Wright, Miller & Kane, *Federal Practice & Procedure*: Civil 2d § 2810.1, p.124; *Fields v. Pool Offshore, Inc*., 1998 WL 43217 (E.D. La. Feb. 3, 1998); *Bardwell v. Sharp*, 1995 WL 517120, at 1 (E.D. La. Aug. 30, 1995), and the Fifth Circuit Court of Appeals has instructed that the standard for Rule 59(e) "favors denial of motions to alter or amend a judgment." *Id*. (*quoting Southern Contractors Group, Inc., v. Dynalectric Company*, 2 F.3d 606, 611 (5th Cir.1993)).

## II. DISCUSSION

      Defendant Hanger challenges the following findings of the Court:

      1.    The Court's finding that Mr. Restivo did not violate the confidentiality provision or Louisiana Trade Secrets Act by using Hanger's referral sources and/or marketing strategies.

      2.    The Court's holding that it need not make an *Erie* guess as to whether Louisiana statutory law requires a non-compete

                                     covenant to specifically list the parishes intended to fall within the geographical restriction.

                3.       The Court's finding that Mr. Restivo's date of termination was August 8, 2005, though he was paid until October 8, 2005.

                4.       The Court's implication that Louisiana Civil Code article 2324 is not relevant to the dispute.

*See* Mot. Recons. (Rec.Doc.No. 104).

**A.**       **Improper Use/Disclosure of Confidential Referral Sources and Marketing Strategies**

        **i.**       **Referral Sources**

Hanger contends that the Court at the outset was under the mistaken impression that Hanger possessed a confidential finite list of its referral sources. Hanger suggests that the Court should have found that the referral sources themselves were confidential trade secrets. Hanger supports this claim with new evidence arguing that Mr. Restivo admitted in an April 19, 2007, deposition that Hanger's referral sources were confidential, that he utilized Hanger's referral sources to obtain business for Hanger, and that he employed Hanger marketing strategies to cultivate these sources. *Id.*

As noted in the Court's Order and Reasons (Rec.Doc.No. 85) of April 11, 2007, the Louisiana Uniform Trade Secrets Act governs the dispute over the alleged breach of the confidential information provision of Restivo's employment contract with Hanger. *See* LA. REV. STAT. ANN. § 51:1431-39. The burden is on the obligee to establish "both the existence of a

legally protectable secret and a legal basis upon which to predicate relief." *Ponchartrain Medical Labs, Inc. v. Roche Boimedical*, No. 95-2260 (La. App. 1 Cir. 6/29/96); 677 So.2d 1086, 1090 (*citing Engineered Mechanical Servs. v. Langlois*, No 83-1384 (La. App. 1 Cir. 12/28/84); 464 So.2d 329. The confidential information provision of the Employment Agreement prohibits improper use or disclosure of Hanger's trade secrets, which include "marketing methods and strategies," as well as "all lists of past, present or prospective patients, customers, referral sources, and suppliers." *See* Order and Reasons, at p. 4 (Rec.Doc.No. 85).

The Court reasoned that referral sources were not susceptible of being a "legally protectable secret"[1] because such sources were readily identifiable and accessible in the telephone directory. *Id.*, at p. 21. Defendant has not offered any evidence suggesting that Hanger's "secret" referral sources were not readily identifiable or accessible to the general public.[2] The Court acknowledges that referral sources are a vital part of the orthotics and prosthetics business, as customers are often derived from these sources. However, any particular

---

[1] Louisiana law defines a "trade secret" as

> "information, including a formula, patter, compilation, program, device, method, technique, or process, that:
> (a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and
> (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

LA. REV. STAT. ANN. § 51:4331.

[2] Indeed, any professional seeking to service an orthotics or prosthetics patient cannot be clandestine if he/she wishes to receive business.

referral source or any compilation of referral sources cannot be not susceptible of being a trade secret as the information is generally available to the public.

The deposition testimony highlighted by Defendant concerns "information that was obtained regarding when a physician is about to do an amputation." *See* Mot. Recons., at p. 6. This information indeed may be a trade secret, and improper use or disclosure of this information would be a violation of the Louisiana Trade Secrets Act and/or a breach of the Confidentiality Provision of the Employment Agreement. However, such a violation regards improper use of confidential information about patients as opposed to referral sources. That is, if Defendant can show that Mr. Restivo obtained information about certain future prosthetics patients through a referral source while working at Hanger, and used this information to further his own business, then the Court could assess damages against Mr. Restivo. Thus, the Court finds no merit in Defendant's contention with respect to Mr. Restivo's violation of confidential information provision of his Employment Agreement by improperly using or disclosing information about referral sources.

### ii.     Marketing Strategies

With respect to the allegation that Mr. Restivo improperly used or disclosed Hanger's marketing strategies, the Court finds that Hanger has not introduced new evidence to warrant granting of the instant motion. In the previous Order and Reasons, the Court noted that "Hanger offers no showing whatsoever as to what marketing strategies were employed by Mr. Restivo that are trade secrets." *Id.*, at p. 20. Hanger needed to demonstrate or otherwise offer evidence to

create a genuine issue of material fact as to whether Mr. Restivo employed Hanger's secret marketing strategies in furtherance of his own competing business. Defendant merely submits the testimony of Mr. Restivo which shows that Hanger had a general marketing strategy for the New Orleans area, and Mr. Restivo was involved in executing that strategy.

Hanger alleges that Mr. Restivo improperly used Hanger marketing strategies when he conducted "[i]mmediate postoperative preparatory prosthetic seminars at the request of some therapists in Georgia." *See* Mot. Recons., at p. 9-10 (Rec.Doc.No. 104). Although Hanger engaged in the same type of marketing activity, Defendant does not show why holding a seminar with potential referral sources is a marketing tool that can be considered a confidential trade secret. Defendant offers evidence suggesting that Hanger had particular marketing documents, videos, and presentations "explaining Hanger services and Hanger's proprietary technology," and how "use of Hanger services can enhance their own practices." *See* Mot. Recons., at. p. 7 (Rec.Doc.No. 104). Defendant also shows that Mr. Restivo was participating in such marketing techniques by providing educational services to referral sources. *Id.* However, Defendant did not show specifically what confidential marketing techniques or information Mr. Restivo improperly used or disclosed when he went to work on his own. Indeed, the practice of conducting seminars is a marketing tool utilized everywhere and does not constitute a trade secret.

**B.      Making an *Erie* guess as to La. R.S. § 23:921**

In its Order and Reasons of April 11, 2007, the Court held that it need not make an *Erie* guess as to whether La. R.S. § 23:921 requires that the geographical limitation in a non-compete clause specifically list the parishes meant to fall within the scope of the agreement because Defendant Hanger did not submit evidence that created a genuine issue of material fact as to whether Mr. Restivo violated the terms of the agreement by starting a business in St. Tammany Parish. That is, Defendant could not show that Mr. Restivo performed services on behalf of Hanger in St. Tammany Parish, and therefore, the non-compete covenant did not apply there.

Hanger suggests that because Mr. Restivo was marketing to Hanger customers outside of Orleans Parish, it "shows that he was very much involved with the [Business Development Manager's] activities to market to the entire New Orleans area, including St. Tammany Parish." *See* Mot. Recons., at p. 15 (Rec.Doc.No. 104). The Court addressed this argument in its previous Order and Reasons, wherein the Court found the following:

> There is no evidence that Mr. Restivo entered St. Tammany Parish for Hanger, made phone calls on behalf of Hanger to patients or referral sources located St. Tammany Parish, or otherwise conducted any business there. Mr. Lutz's speculations that the Area Practice Manager would have had to manage Hanger's operations in St. Tammany Parish is not sufficient given that there is no corroborating evidence and the short period of time at which Mr. Restivo was employed as Area Practice Manager. Moreover, the phrase "performed services" is not defined in the contract and is vague. It is certainly arguable that considering Mr. Restivo's principal function was fitting orthotics and prosthetics that "performing services" requires he actually do this while physically in St. Tammany Parish.

*See* Order and Reasons, at p. 16 (Rec.Doc.No. 85).

While Hanger suggests one of Mr. Restivo's principal functions was marketing, the Court is left only to speculate whether Mr. Restivo conducted any marking activities in St. Tammany Parish. Mr. Restivo affirms that he did not perform services on behalf of Hanger in St. Tammany

Parish, and this testimony is uncontroverted except for the mere speculation of Jeffrey Lutz. There is no evidence to show that Mr. Restivo ever physically entered St. Tammany Parish on behalf of Hanger. The language in the disputed agreement restricts competition anywhere the employee performed services on behalf of Hanger. This language is overly broad as the phrase "performing services" is ambiguous. For example, Mr. Restivo may have telephoned a patient or referral source that was located in St. Tammany, but whether this constitutes performing services on behalf of Hanger in St. Tammany is arguable.  Thus, the Court construes this ambiguity against Hanger who drafted the agreement.

Furthermore, upon reconsideration the Court finds that Louisiana law does require that parishes intended to fall within the geographical restriction be specifically identified in order for a non-compete agreement to be valid.[3] As is illustrated here by the "performing services" language, it is clear that even seemingly innocuous language can unfairly restrict or inhibit a former employee from pursuing his trade. The purpose of La. R.S. § 23:921 was to limit the ability of an employer to unreasonably restrict its employees after they leave employment. While a strict interpretation of the statute can be criticized as being overly technical, such a reading is consistent with Louisiana's strong public policy prohibiting covenants not to compete.[4]

---

[3] The most recent Louisiana jurisprudence interpret La. R.S. § 23:921 as requiring parishes to be specifically listed in a non-compete covenant's geographical restriction. *Compare Vartech Systems, Inc. v. Hayden*, 2006 WL 3734369 (La. App. 1 Cir. 12/20/06); *Turner Professional Servs., Ltd. v. Broussard*, No. 99-2838 (La. App. 1 Cir. 5/12/00); 762 So.2d 184; *Kimball v. Anesthesia Specialists of Baton Rouge*, No. 00-1954 (La. App. 1 Cir. 9/28/01); 809 So.2d 405;  with *Portor v. Milliken & Michaels, Inc.*, 2001 WL 617184, at *3 (E.D. La. Jun. 5, 2001); *Petroleum Helicopters, Inc. v. Untereker,* 731 So.2d 965, 967 (La.App. 3d Cir.1999).

[4] Louisiana Supreme Court has articulated the standard for interpreting non-compete agreements as follows:

**C.     Mr. Restivo's Date of Termination**

The Court found that Mr. Restivo's termination of employment with Hanger occurred on August 7, 2005, despite being paid until October 2005. Although the Court did not directly address this issue, the Court found that Mr. Restivo would not have a duty of loyalty or fiduciary duty to Hanger as of August 8, 2005, because Hanger requested that Mr. Restivo no longer come to work. Defendant cannot show that this finding was manifestly erroneous;[5] thus, the Court finds Defendant's motion is without merit with respect to this issue.

---

> Louisiana's strong public policy restricting these types of agreements is based upon an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden. *See McAlpine v. McAlpine,* 94-1595, p. 11 (La.9/5/96), 679 So.2d 85, 91. Because such covenants are in derogation of the common right, they must be strictly construed against the party seeking their enforcement. *Hirsh v. Miller,* 249 La. 489, 187 So.2d 709, 714 (1966); *Turner Professional Services, Ltd. v. Broussard,* 99-2838, p. 3 (La.App. 1 Cir. 5/12/00), 762 So.2d 184, 185. The exceptions to this provision are specifically enumerated by the statute and provide for employer/employee relationships, corporation/shareholder relationships, partnership/partner relationships and franchise/franchisee relationships. The statute defines the limited circumstances under which a noncompetition clause may be valid in the context of each of these relationships.

*SWAT 24 Shreveport Bossier, Inc. v. Bond*, No. 00-1695, at p. 5 (La. Jun. 29, 2001); 808 So.2d 294, 298.

[5] "[T]he essential elements of an employment contract (employer-employee) relationship are (1) mutual consent, (2) giving of services (labor), and (3) a fixed price." *Hopping v. Louisiana Horticulture Com'n*, No. 86-0436 (La. App. 1 Cir. 5/27/87); 509 So.2d 751. Here, Mr. Restivo no longer worked for Hanger after August 7, 2005, as Hanger asked him not to come into work. Mr. Restivo even desired to work until October 2005. No labor was given after August 7, 2005, and thus, no contract of employment existed after this date despite Mr. Restivo receiving payment through October 2005.

D.   **Relevance of Louisiana Civil Code art 2324**

Defendant argues that the Court mistakenly implied that Louisiana Civil Code article 2324 was not relevant to Defendant's claims. The Court, however, made no such statement. Rather, the Court found that the allegation that Mr. Restivo conspired to commit theft and criminal conversion in violation of Louisiana Civil Code article 2324 was not plead.[6] Hanger suggests that the allegation that "Rodman and Restivo conspired to form Limbcare" supports reconsideration of the Court's finding. This contention is without merit as no allegation of theft or conversion is made in the Counterclaim. Article 2324 would be relevant in this matter if Hanger can show a conspiracy to commit some kind of unfair trade practice, such as theft or conversion. Accordingly,

**IT IS ORDERED** that the Motion for Reconsideration (Rec.Doc.No. 104) is **DENIED**. New Orleans, Louisiana, on this __4th__ day of May, 2007.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**

---

[6] Any proof of theft, conversion, and conspiracy to commit theft or conversion, however, will be relevant to the claims under the Louisiana Unfair Trade Practices Act.